UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ENRIQUE DIAZ,

              Plaintiff,

vs.                         Case No.  2:05-cv-2-FtM-29DNF
                                 Case No.  2:02-cr-60-FtM-29DNF

UNITED STATES OF AMERICA,

              Defendant.
_____

**OPINION AND ORDER**

_____This matter comes before the Court on a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cv. Doc. #1[1]) filed on January 3, 2005.  The United States filed its Response in Opposition (Cv. Doc. #11) on March 7, 2005.  Petitioner filed a Reply (Cv. Doc. #12) on April 4, 2005.

**I.**

On June 5, 2002, petitioner Enrique Diaz (petitioner or Diaz) and Lazaro Jesus Lopez were named in each count of a three-count Indictment (Cr. Doc. #12) charging conspiracy to manufacture 100 or more marijuana plants (Count One), manufacture of 100 or more

---

[1]Unless otherwise specified, docket numbers referring to the criminal case are cited as (Cr. Doc.) and docket numbers referring to the civil case are cited as (Cv. Doc.).

marijuana plants (Count Two), and possession with intent to distribute 100 or more marijuana plants (Count Three).  In due course petitioner's attorney filed a motion to suppress evidence (Cr. Doc. #39).  After an evidentiary hearing and the submission of supplemental memoranda, the assigned magistrate judge filed a Report and Recommendation (Cr. Doc. #56) recommending that the motion be denied.  On September 24, 2002, the district court adopted the Report and Recommendation and denied the motion to suppress.  (Cr. Doc. #60).

On January 2, 2003, the United States Attorney's Office filed an Information Charging Prior Conviction as to Defendant Enrique Diaz (Cr. Doc. #89) pursuant to 21 U.S.C. § 851, setting forth petitioner's prior drug conviction in order to enhance the maximum statutory penalties.  Also on January 2, 2003, the government filed a Notice of Government's Intention to Use Prior Conviction to Enhance the Penalty as to Counts One, Two, and Three of the Indictment as to Defendant Diaz (Cr. Doc. #88).  This Information and Notice increased the statutory maximum sentence from a mandatory minimum five years imprisonment to forty years imprisonment, a $2 million fine, and supervised release of four years to life to a mandatory ten years to life imprisonment, a fine not to exceed $4 million, and supervised release of at least eight years up to life.

On January 10, 2003, a jury convicted petitioner of all three counts.  (Cr. Doc. #107).  On April 21, 2003 petitioner was

sentenced to concurrent terms of 120 months imprisonment on each count, concurrent terms of 96 months supervised release on each count, a $7,500 fine, and a $300 special assessment. (Cr. Doc. #121). Petitioner filed a direct appeal (Cr. Docs. #108, 115), and his conviction and sentence were affirmed by the Eleventh Circuit Court of Appeals on December 2, 2003. (Cr. Doc. #135).

Petitioner's timely § 2255 motion is now before the court. All but two of petitioner's claims relate to the alleged ineffective assistance of trial and/or appellate counsel.

## II.

### A.

Issues of ineffective assistance of counsel can be raised in a § 2255 proceeding even where petitioner could have raised the issues on direct appeal but failed to do so. Massaro v. United States, 538 U.S. 500 (2003). The Supreme Court established a two-part test for determining whether a convicted person is entitled to habeas relief on the ground that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). See also Florida v. Nixon, 125 S. Ct.

551 (2004); Wiggins v. Smith, 539 U.S. 510 (2003); Williams v. Taylor, 529 U.S. 362 (2000). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). This judicial scrutiny is "highly deferential." Id. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. An attorney is not ineffective for failing to raise a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). In light of the general principles and presumptions applicable to ineffective assistance of counsel claims, the cases in which habeas petitioners can prevail are few and far between. Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001).

The same deficient performance and prejudice standards apply to appellate counsel. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Flores-Ortega, 528 U.S. at 476-77. If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997). Nonmeritorious claims which are not raised on direct appeal do not constitute ineffective assistance of

counsel.  <u>Diaz v. Sec'y for the Dep't of Corr.</u>, 402 F.3d 1136,
1144-45 (11th Cir. 2005).

With these principles in mind, the Court examines the specific
issues raised by petitioner.

**B.**

**(1)  Unlawful Traffic Stop:** Petitioner claims he received
constitutionally ineffective assistance of counsel because his
trial attorney failed to file a motion to dismiss the indictment or
request an evidentiary hearing prior to trial on the ground that
the initial traffic stop and the subsequent search and seizure of
the vehicle were unlawful under the Fourth Amendment.  Petitioner
also asserts that his appellate attorney was ineffective for
failing to raise these Fourth Amendment issues on direct appeal.
(Cv. Doc. #1, pp. 17-23; Cv. Doc. #12, pp. 3-6).

The testimony at the suppression hearing established that on
May 16, 2002, Detective Leonard Richardson of the Cape Coral Police
Department was requested by a patrol officer to respond to the
scene of a burglary/battery.  Detective Richardson did so, and
spoke with Mercedes Diaz, petitioner's sister.  Ms. Diaz showed
Detective Richardson two rooms in the house with equipment to set
up an indoor marijuana grow operation, and told him that she knew
of at least two houses where cannabis was being grown.  Ms. Diaz
also stated that she had had an altercation with petitioner at the
house because petitioner was trying to get her to grow marijuana in

-5-

the house and she did not want to do so.  Ms. Diaz was taking the
grow equipment out of the house when petitioner came over and a
fight between them started.  Petitioner left driving a black Tahoe.

The Cape Coral Police Department broadcast a description of
the vehicle and petitioner after he left the domestic disturbance.
Officer James Connor heard the broadcast that someone had broken
into a house, there had been some type of domestic disturbance,
that someone had a machete, someone had been cut, a vehicle was
leaving the area, and someone had chased someone.  Officer Connor
also heard the description of the vehicle.  Officer Connor, who was
within two miles of the scene of the domestic disturbance, observed
the vehicle and followed it in his marked police vehicle.  Officer
Connor saw the driver change his driving habits, look in his rear
view mirror more often than a normal driver would, and make several
turns.  Officer Connor activated his lights, and the vehicle
stopped at the side of the road, on the edge of the pavement with
its bumper blocking a portion of the road.  Petitioner exited the
vehicle; Officer Connor exited his patrol vehicle, and drew his
firearm because he did not know what he had and a machete had been
involved in the incident.  Officer Connor ordered petitioner to put
up his hands, and noticed that one of the hands was wrapped in some
type of material which was covered in blood.  Officer Connor called
EMS, and petitioner was ultimately taken to the hospital.
Petitioner left his keys in the vehicle, and officers determined
that the vehicle could not be left in that location because it

-6-

would obstruct traffic and possibly be subject to vandalism.  After consulting a supervisor, the vehicle was impounded and towed to the storage lot pursuant to standard Cape Coral Police Department procedure.  The vehicle was inventoried the next day.  Petitioner was arrested by a DEA Task Force agent the day following the traffic stop, after his release from the hospital.

As noted above, the record reflects that petitioner's trial counsel did file a motion to suppress evidence based upon a Fourth Amendment violation.  (Cr. Doc. #39).  This motion noted that petitioner who been stopped by law enforcement officers pursuant to a domestic disturbance investigation, and that prior to the stop Ms. Diaz told officers that petitioner was growing marijuana in two or three homes in Lee County.  (Cr. Doc. #39, ¶¶ 1, 2).  The motion did not contend that the initial traffic stop or vehicle seizure was unlawful; rather, it asserted that the seizure of keys left in the vehicle and a subsequent inventory search of the vehicle at the impound lot were unlawful.

Initially, the Court rejects petitioner's argument that a motion to dismiss the indictment, as opposed to a motion to suppress, should have been filed.  The remedy for a violation of the Fourth Amendment is the suppression of the evidence and its fruits, not dismissal of an indictment.  Wong Sun v. United States, 371 U.S. 471 (1963); Terry v. Ohio, 392 U.S. 1, 12-13 (1968); Brown v. Illinois, 422 U.S. 590, 600-04 (1975).

Petitioner asserts that defense counsel failed to conduct a thorough pretrial investigation in order to determine that he had been stopped and involuntarily detained and that his vehicle had been searched and subsequently seized.  (Cv. Doc. #1, p. 18).  The record, however, clearly establishes that defense counsel knew these facts.  The Motion to Suppress (Cr. Doc. #39, ¶¶ 1, 2), the Government's Response to Motion to Suppress Evidence (Cr. Doc. #45, pp. 1-3), and the Addendum (Cr. Doc. #51) recited these facts, as did defense counsel's Supplemental Memorandum (Cr. Doc. #53).  Additionally, these facts were fully elicited at the suppression hearing (Cr. Doc. #54) and summarized in the Report and Recommendation.  (Cr. Doc. #56, pp. 2-7).

Defense counsel's decision not to challenge the initial stop and detention was clearly intentional, since the government made note of the failure to challenge this aspect of the police conduct in its Addendum (Cr. Doc. #51, n.1) and defense counsel's subsequent Supplemental Memorandum (Cr. Doc. #53) continued to argue only that the subsequent impound search was unlawful.  The Court looks to the facts of the case and the substantive law to determine whether this decision by defense counsel was objectively reasonable.  The Court finds that this tactical decision, under the facts and circumstances of this case, was objectively reasonable and did not constitute deficient performance or cause prejudice to petitioner.

Petitioner argues that stopping an automobile and detaining its occupant constitutes a seizure within the meaning of the Fourth Amendment. This is clearly a correct legal proposition. Whren v. United States, 517 U.S. 806, 809-10 (1996); Delaware v. Prouse, 440 U.S. 648, 653 (1979). Petitioner further asserts that the initial stop of his vehicle was a pretext so the officer could further investigate a claim of domestic violence which had been reported to the police department. In petitioner's view, since he had left the scene of the reported domestic violence, police were limited to taking a report, issuing a complaint case number, and referring the matter to the State Attorney's Office. Petitioner argues that the pretextual nature of the stop to investigate the domestic violence complaint resulted in a violation of his Fourth Amendment rights. Additionally, petitioner argues that there was no probable cause to support the investigatory stop of the vehicle. Further, petitioner asserts that because the officer who stopped the vehicle drew his firearm, pointed it at petitioner, and ordered petitioner to exit the vehicle, he was under arrest and this arrest was not supported by probable cause. (Cv. Doc. #1, pp. 18-23).

A traffic stop is constitutional under the Fourth Amendment if it is supported by reasonable suspicion under Terry v. Ohio, 392 U.S. 1 (1968) or by probable cause to believe a traffic violation has occurred under Whren v. United States, 517 U.S. 810 (1996). United States v. Chanthasquxat, 342 F.3d 1271, 1275 (11th Cir. 2003). In the context of a traffic stop, a pretext argument is

typically raised in connection with a stop made for a traffic violation when the officer was actually interested in the investigation of some other criminal offense.  Prior to <u>Whren</u> the Eleventh Circuit considered the officer's subjective motivation to determine if the stop was pretextual, and therefore unlawful.  <u>E.g.</u>, <u>United States v. Hardy</u>, 855 F.2d 753, 756 (11th Cir. 1988).  However, "[t]he <u>Whren</u> Court squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit."  <u>United States v. Holloman</u>, 113 F.3d 192, 194 (11th Cir. 1997).  <u>See also</u> <u>United States v. Simmons</u>, 172 F.3d 775, 778 (11th Cir. 1999).  Petitioner's pretext argument would therefore fail.  In this case, however, there was no claim by the government that the traffic stop was justified because the driver committed a traffic violation (Cr. Doc. #51, p. 2. n.1), and therefore no pretext issue.

The stop of the vehicle in this case was permissible under <u>Terry</u>.  The propriety of an investigative stop under <u>Terry</u> is a two-part inquiry.  The Court first determines whether the officer's action was justified at its inception, which turns on whether the officer had a reasonable suspicion that petitioner had engaged, or was about to engage, in a crime.  The second part of the inquiry determines whether the stop went too far and matured into an arrest before there was probable cause.  <u>United States v. Acosta</u>, 363 F.3d 1141, 1144-45 (11th Cir. 2004).  Officer Connor was allowed to stop petitioner if, under the totality of the circumstances, from the collective knowledge of the officers involved in the investigation,

there was an objectively reasonable suspicion that petitioner had engaged in, or was about to engage in, a crime. Acosta, 363 F.3d at 1145. This is satisfied if officers involved in the investigation have reasonable suspicion, even if the officer who actually conducts the stop lacks reasonable suspicion. United States v. Powell, 222 F.3d 913, 918 (11th Cir. 2000); United States v. Glinton, 154 F.3d 1245, 1257 (11th Cir. 1998), cert. denied, 526 U.S. 1032, 1104 (1999); United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989). Reasonable suspicion is a less demanding standard than probable cause, but requires at least a minimal level of objective justification for making the stop. Acosta, 363 F.3d at 1145. Thus, contrary to petitioner's argument, a Terry stop need not be supported by probable cause. See also United States v. Arvizu, 534 U.S. 266, 273 (2002).

The evidence elicited at the suppression hearing, although not focusing upon this aspect of the police conduct, established that a reasonable attorney would not have been obliged to challenge the stop or impoundment of the vehicle. A burglary/domestic violence offense was being investigated; Ms. Diaz told the detective about the fight which involved a machete, and that her brother was growing marijuana in several houses; shortly after petitioner left the house the police department broadcast a report of the burglary/domestic violence and a description of petitioner and his vehicle; within a short period of time and in close proximity to the incident, Officer Connor observed petitioner driving a vehicle

matching the broadcasted description.  The driver of the vehicle changed driving habits, looked frequently at the patrol vehicle, and made several turns.  Officer Connor activated his lights, and the vehicle stopped.  The officer's stop was supported by reasonable suspicion and therefore was lawful under Terry.  The vehicle was partially blocking the roadway and was subject to vandalism if left unattended.  It was therefore properly impounded. It was objectively reasonable for petitioner's attorney not to challenge the lawfulness of these aspects of the police conduct.

Petitioner asserts, however, that he was under arrest when Officer Connor drew and pointed his firearm at petitioner and ordered petitioner to get out of the car, and that there was no probable cause at this point.  It is clear that a police officer may order the driver or occupant of a vehicle out of vehicle during a traffic stop without violating the Fourth Amendment. Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977); Maryland v. Wilson, 519 U.S. 408 (1997).  The Eleventh Circuit law is well settled that where there are safety concerns, drawing a weapon, pointing it at the driver, and ordering him to get out of the vehicle does not necessarily convert an investigative stop into an arrest.  United States v. Roper, 702 F.2d 984 (11th Cir. 1983); United States v. Pantoja-Soto, 768 F.2d 1235, 1236-37 (11th Cir. 1985); Courson v. McMillian, 939 F.2d 1479, 1494-95 (11th Cir. 1991); Jackson v. Sauls, 206 F.3d 1156, 1167 n.13 (11th Cir. 2000). Here, Officer Connor testified he drew his firearm because of

uncertainty as to what he had and because of information concerning the involvement of a machete. "It is well established that officers conducting a traffic stop may take such steps as are reasonably necessary to protect their personal safety." United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001)(internal citation and quotation marks omitted). Officer safety fully justified the drawing and pointing of the firearm, and this did not convert the stop into an arrest which required probable cause. The failure to challenge this aspect of the police conduct was objectively reasonable.

Finally, petitioner asserts that because the incident was a domestic disturbance and he had left the scene before the police arrived, the police could only write a report and forward it to the State Attorney's Office. Nothing of the sort is correct. Law enforcement officers are not precluded from attempting to locate a person suspected of a burglary/domestic assault with a dangerous weapon such as a machete, or a person that was alleged to have been involved in multiple marijuana grow-houses.

When petitioner was taken to the hospital, his vehicle was partially blocking the roadway. The officers decided to impound the vehicle, and conducted an inventory search in connection with the impoundment. The magistrate judge found no violation of the Fourth Amendment in the impoundment (Cr. Doc. #56, pp. 7-9), and this was adopted by the district court. Thus, defense counsel was

-13-

not ineffective as to the lawfulness of the impoundment, since it was raised and resolved at the trial court level.

The Court finds that under the facts and circumstances of this case a reasonable attorney would not have challenged the initial stopping of the vehicle, the initial detention of petitioner, or the impoundment of the vehicle. Accordingly, petitioner has failed to establish that trial counsel's performance was deficient. Additionally, because the initial stop, detention, and impoundment were not a violation of the Fourth Amendment, petitioner has not shown any prejudice from the failure to challenge this aspect of the police conduct. For the same reasons, appellate counsel was not deficient in, and no prejudice resulted from, failing to raise these Fourth Amendment issues on direct appeal.

**(2) Insufficiency of Motion to Suppress**: In a related vein, petitioner argues that his trial attorney was ineffective because the motion to suppress that he did file only addressed the inventory search in the impound lot, and not the initial stop, search, and seizure of the vehicle by police. Petitioner argues that the filing of such a "wholly inadequate" motion to suppress, and failing to file a motion to dismiss the indictment because of the initial stop, constituted constitutionally ineffective assistance of counsel. (Cv. Doc. #1, pp. 23-26).

For the reasons stated in addressing the first issue, the Court concludes that there was no ineffective assistance of counsel in filing a motion to suppress which effectively conceded the

-14-

validity of the initial stop but contested the remainder of the police conduct.  It is clear that the initial stop and detention were lawful, and neither deficient performance nor prejudice has been shown.

**(3) Destroyed Evidence/Lab Reports**: Petitioner argues that his attorney was ineffective in failing to file a motion to dismiss the indictment or request an evidentiary hearing concerning the pre-trial destruction by the police of the marijuana he allegedly possessed, and in failing to object to the government's failure to produce or introduce a corresponding laboratory report or other written record in order to confirm that it was a controlled substance.  Petitioner asserts that because both the bulk marijuana and the representative test samples were destroyed, the government failed to satisfy its burden of proving that the substance he possessed was in fact a controlled substance which violated federal law, and that this violated his due process rights.  Even though the forensic chemist testified at trial, petitioner asserts that a certified copy of the laboratory report was necessary, as well as a chain of custody report.  Petitioner also argues that appellate counsel was ineffective for failing to raise these issues on direct appeal.  (Cv. Doc. #1, pp. 26-35; Cv. Doc. #12, pp. 6-8).

In order to show that the loss of or failure to preserve evidence by the government constitutes a denial of due process, petitioner must show that the evidence was material, i.e., that it was likely to significantly contribute to his defense, and that the

police acted in bad faith.  <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58
(1988); <u>United States v. Brown</u>, 9 F.3d 907, 910 (11th Cir. 1993).
There is no suggestion of either in this case, and therefore
counsel was not ineffective in failing to raise the issue in the
trial court.

First, there is not even a suggestion that the actual bulk
marijuana or samples were material to petitioner's defense.
Additionally, the government proffered, and defense counsel agreed,
that the case agent had offered defense counsel the opportunity to
inspect the marijuana prior to its destruction and counsel
declined.  (Cr. Doc. #116, p. 300).  There is no evidence which
suggests that the substance was not marijuana, and indeed all the
evidence indicated that it was marijuana.  Defense counsel's
opening statement did not dispute that marijuana was involved, but
stated that the co-defendant/government witness Lazaro Lopez was
responsible for it.  (Cr. Doc. #118, pp. 38-39).  Detective
Richardson, an experienced marijuana investigator, testified to the
seizure of the plants from the various locations and identified
them as marijuana plants.  (Cr. Doc. #118, pp. 49-57; 65-67).  The
government played videotapes of the growing marijuana and equipment
as it was found at the various locations (Cr. Doc. #118, pp. 103-
19), and the officer testified that the marijuana was mature plants
and of a quantity consistent with an intent to distribute.  (Cr.
Doc. #118, pp. 122-23).  Special Agent Steven Duquette, another
experienced drug agent, testified that he had no doubt the material

-16-

was marijuana. (Cr. Doc. #116, p. 298). Co-defendant Lopez testified he was "cultivating marijuana," (id. at 131), that petitioner asked him to take care of a house that would have marijuana inside (id. at 138, 140, 212), that he met petitioner at Gerardo Diaz' house, which had growing marijuana plants (id. at 143-44), that he agreed to petitioner's request and eventually obtained a rental house and petitioner installed equipment and put in marijuana plants (id. at 158-59).

Further, there is no evidence that the destruction of the evidence was done in bad faith. Special Agent Duquette testified that he collected the marijuana from the Cape Coral police department, took representative samples from the two bulk quantities, took the marijuana samples and the much smaller quantity seized from the third location to the DEA laboratory, and sent the bulk marijuana to the DEA warehouse for subsequent destruction pursuant to DEA policy. (Cr. Doc. #116, pp. 292-94). All the samples and the smaller quantity were examined by the laboratory chemist. (Id. at 297). Special Agent Duquette's destruction letter was mistakenly applied to the samples as well as the bulk quantities after the material was tested by chemist Bruna. Petitioner argues that counsel was ineffective in failing to request a copy of the form the DEA agent testified he had mistakenly forwarded to the lab and storage facility. (Cv. Doc. #1, pp. 30-31). There is no indication that this was not a part of discovery, and certainly no evidence that it was inconsistent with

-17-

the officer's testimony or beneficial to petitioner's case.  Mr. Bruna clearly testified he tested the marijuana samples and all were marijuana.  (Cr. Doc. #116, pp. 313-317).  Any inconsistency between Ms. Churchall's testimony and other government witnesses does not demonstrate bad faith.

(4) **Failure to Renew Rule 29 Motion**: Petitioner argues that his trial attorney was constitutionally ineffective because he failed to renew his motion for a judgment of acquittal at the conclusion of all the evidence.  Petitioner argues that such a renewed motion should have focused on the lack of evidence, the conflicting statements by alleged co-conspirators, and the testimony that a co-conspirator had claimed ownership of all the plants.  The failure to renew the motion also resulted in the application of a different standard of review on direct appeal. (Cv. Doc. #1, pp. 35-39).

The Court will assume that there was no valid tactical reason for counsel not to renew a motion at the conclusion of all the testimony, and that therefore petitioner has shown deficient performance.  Petitioner cannot, however, show prejudice.  A renewed motion at the conclusion of all the evidence would have required the court to review the sufficiency of the evidence, drawing all reasonable inferences in the government's favor, and determine wither a reasonable jury could conclude that the evidence established petitioner's guilt beyond a reasonable doubt.  Under this standard, there was ample evidence upon which a reasonable

-18-

jury could find petitioner guilty of all three counts, and therefore no prejudice resulted from the failure to renew the motion.

**(5) Invalid Indictment**: Petitioner argues that his trial attorney was constitutionally ineffective in failing to file a motion to dismiss the Indictment on the ground that the Indictment had never been submitted to or examined by a grand jury for a formal finding/charging of the offenses contained therein. Petitioner claims the Indictment is defective because the case number in the upper right hand corner fails to have a specific number inserted, and the Indictment was never signed by a grand jury foreperson and is not dated. Additionally, petitioner asserts that the grand jury vote concurrence form, DC Form 53, failed to have a designated case number and fails to record the requisite number of grand jurors who concurred in the Indictment, and was never signed or dated by the foreperson.  (Cv. Doc. #1, pp. 39-46).

The original Indictment (Doc. #12) is in the court file, and the Court has examined it.  **(Certified copy attached)**.  Contrary to petitioner's assertions, the Indictment does have a case number, was signed by the grand jury foreperson, and was dated.  The Court has also viewed the original of the grand jury form DC 53 **(certified copy attached),** which are maintained by the Clerk of the Court.  This form also has a case number, lists the number of grand

-19-

jurors concurring in the Indictment, is signed, and is dated. Petitioner's issue therefore has no merit, and his attorney was not ineffective for failing to challenge the Indictment on any of the grounds now asserted.

**(6)  Invalid  Indictment  as  Appellate  Issue/Jurisdictional Issue:**  Petitioner  argues  that  appellate  counsel  was constitutionally  ineffective  for  failing  to  raise  the  invalid Indictment as an issue on direct appeal.  Petitioner also asserts that the lack of a valid Indictment deprived the court of subject matter jurisdiction, and therefore the issue can be asserted in the § 2255 proceeding.  (Cv. Doc. #1, pp. 46-49, 62-65).

For the same reasons as discussed in the fifth issue above, appellate counsel was not ineffective for failing to raise the validity of the Indictment as an issue on direct appeal.  Since the record clearly establishes the existence of a valid indictment, there is no lack of jurisdiction.

**(7)  Section  851  Enhancement:**  Petitioner  asserts  that  his attorney was ineffective for failing to object to the imposition of a sentence pursuant to 21 U.S.C. § 851 because § 851 is a separate offense which was not contained in the Indictment and was not submitted as an issue for the jury.  (Cv. Doc. #1, pp. 57-58).

The  substantive  issues  concerning  petitioner's  § 851  claims are discussed in Section III below, and the Court concludes that there  was  no  error  in  connection  with  these  issues.   The  Court

further concludes that a reasonable attorney would not have asserted that § 851 constitutes a separate offense, and would not have been required to assert that prior convictions must be set forth in an indictment or submitted to a jury. Accordingly, there was no deficient performance. Further, it is clear even now that the law does not require the prior convictions to be set forth in an indictment, and therefore there is no prejudice from counsel's failure to make such arguments.

**(8) Blakely**[2] **as Appellate Issue:** Petitioner argues that his appellate attorney was constitutionally ineffective by failing to amend the appellate brief to include a Blakely argument because, while the Supreme Court had not yet decided Blakely, it had granted *certiorari*. (Cv. Doc. #1, pp. 58-61). Blakely did not itself further petitioner's position, and it was not until Booker[3] was decided that the Sentencing Guidelines were found to be advisory only. Booker was decided long after petitioner's case was decided by the Eleventh Circuit, and there was no ineffective assistance of counsel in failing to amend the appellate brief merely because *certiorari* had been granted in Blakely.

### III.

### A.

---

[2]Blakely v. Washington, 542 U.S. 296 (2004).

[3]United States v. Booker, 543 U.S. 220 (2005).

Petitioner argues that because of the lack of a certified copy of the lab reports or a certified chain of custody form, there was plain error when the government was allowed to introduce photographs of various houses where marijuana had been located, samples of the marijuana seized, or testimony about such things. (Cv. Doc. #1, p. 29).  This issue is without merit.

It is certainly true that the government must prove the identity of the controlled substance beyond a reasonable doubt. This does not, however, require production of the substance or its laboratory testing.  The identification of the controlled substance may be established by circumstantial evidence, such as the testimony of a co-conspirator, United States v. Cole, 755 F.2d 748, 761 (11th Cir. 1985), or the testimony of an experienced drug enforcement investigator, United States v. Sanchez, 722 F.2d 1501, 1506 (11th Cir. 1984), or other circumstances surrounding the events.  United States v. Harrell, 737 F.2d 971, 978-79 (11th Cir. 1984), cert. denied, 469 U.S. 1164, 470 U.S. 1027 (1985).  As summarized above, there was ample foundation justifying the admission of the evidence.

Additionally, Special Agent Duquette testified that he collected the marijuana from the Cape Coral police department, took representative samples from the two bulk quantities, took the marijuana samples and the much smaller quantity seized from the third location to the DEA laboratory, and sent the bulk marijuana to the DEA warehouse for subsequent destruction pursuant to DEA

policy. (Cr. Doc. #116, pp. 292-94). Any defect in the chain of custody goes only to the weight of the evidence, not to its admissibility. <u>United States v. Kubiak</u>, 704 F.2d 1545, 1552 (11th Cir. 1983).

A forensic chemist testified as to his examination of the marijuana samples and the smaller bulk quantity, and the officers testified as to the chain of custody. Nothing required the introduction of either certified copies of lab reports or chain of custody forms. Indeed, unless the forms were inconsistent with the testimony, it is doubtful that such forms would have been admissible.

**B.**

Petitioner claims that his rights under the Fifth and Sixth Amendments, Fed. R. Crim. P. 7(b), 18 U.S.C. § 3553(a)(2)(A), and <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) were violated when the government filed an Information pursuant to 21 U.S.C. § 851 setting forth his prior felony convictions, but the convictions were never contained in the Indictment nor presented to the jury. Under the § 851 enhancement, the statutory penalty was increased to a mandatory minimum ten years imprisonment. Petitioner also argues that § 851 describes a separate offense from those charged in his Indictment. (Cv. Doc. #1, pp. 49-56).

The pertinent portion of § 851(a)(1) provides:

No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason

-23-

of one or more prior convictions, unless before trial, or
before entry of a plea of guilty, the United States
attorney files an information with the court (and serves
a copy of such information on the person or counsel for
the person) stating in writing the previous convictions
to be relied upon.

This is clearly not a separate offense, but is a sentencing
enhancement provision.

Blakely is now deemed to be a claim under United States v.
Booker, 543 U.S. 220 (2005), United States v. Lee, 427 F.3d 881,
891 (11th Cir. 2005), and the Eleventh Circuit held "that Booker's
constitutional rule falls squarely under the category of new rules
of criminal procedure that do not apply retroactively to § 2255
cases on collateral review." Varela v. United States, 400 F.3d
864, 867-68 (11th Cir.), cert. denied, 126 S. Ct. 312 (2005)(citing
Schriro v. Summerlin, 542 U.S. 348, 357-58 (2004)). See also
United States v. Moreno, 421 F.3d 1217, 1220 (11th Cir. 2005).
Additionally, it is clear that prior convictions need not be set
forth in an indictment or decided by a jury. Almendarez-Torres v.
United States, 523 U.S. 224 (1998).

Accordingly, it is now

**ORDERED:**

1.  Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or
Correct Sentence by a Person in Federal Custody (Cv. Doc. #1) is
**DENIED.**

2.  The Clerk of the Court shall enter judgment accordingly
and close the civil file.

3.   The Clerk of the Court shall file a copy of the civil judgment in Case No. 2:02-cr-60-FtM-29DNF.

4.   The Clerk shall unseal the grand jury's vote record, which is hereby attached as an exhibit.

**DONE AND ORDERED** at Fort Myers, Florida, this ___19th___ day of December, 2005.


JOHN E. STEELE
United States District Judge


Copies:
Counsel of Record
Enrique Diaz